Coven, J.
This is an action by the buyer-homeowners to recover for the defendant’s alleged breach of contract, breach of warranty and G.L.c. 93A violations in the construction of their new house. After a jury trial, judgment was entered for the plaintiffs on their contract claim. The defendant has appealed pursuant to Dist./Mun. Cts. R. A D. A., Rule 8C, on a charge of error in the trial judge’s denial of its motions in limine and for judgment notwithstanding the verdict.
In 1992, the plaintiffs entered into discussions with one Jose Martins (“Martins”), president of Kepa Homes Corp. (“Kepa”), about the construction of a new house in a development in Framingham. The plaintiffs thereafter executed a purchase and sale agreement as buyers with “Jose Martins, Trustee of Kepa Realty Trust and President of Kepa Home Corporation” as seller. Attached to the purchase and sale agreement, and incorporated by reference, were an addendum, construction agreement, warranties and building specifications.
In January, 1993, the plaintiffs purchased the land, and title was deeded to them by “Jose Martins, Trustee of Kepa Realty Trust.” The house was built, and the plaintiffs took occupancy in May, 1993. During their first winter in the house, the plaintiffs discovered a leak from the roof which resulted in saturated ceiling plaster, soaked floors and stained walls in the den, in hallways and down into the basement. Martins initially refused to provide any assistance on the grounds that the roof leak was not caused by anything covered by the construction warranties. He eventually sent out a Kepa Home Corp. employee who cut a whole in an interior wall of the house, rigged up a type of indoor gutter system, which merely channeled the cascading water from the roof leak into a bucket, and instructed the plaintiffs to keep emptying the bucket. The leaks and water damage continued through the winter and into the spring. At a later point, Martins relented and sent Kepa employees to the house to install the soffit roof vents which had been specifically required by the building contract and for which Kepa had substituted, without authority, cheaper Hicks roof vents. This measure also failed to remedy the roof defects, and Martins provided no additional assistance.
The plaintiffs commenced this action on May 22, 1997. After trial, the jury returned a verdict for the plaintiffs on their breach of contract claim in the amount of $12,409.33, and on their breach of warranties claim, but with no damages. The *171 court entered judgment for the defendant on the G.L.c. 93A count.
1. At the close of the plaintiffs’ evidence, the defendant moved for a directed verdict on the ground that only Kepa Realty Trust, and not defendant Kepa Homes Corp., was bound by the parties’ construction contract and warranties. It was only at this stage of the proceeding that the defendant raised for the first time, with no prior notice to the plaintiffs or the trial judge, the issue of an improper party. However, the “Agreed Facts” section of the parties’ “Joint Pre-Trial Memorandum,” filed two months before trial on January 21,1999, unambiguously recited:
The defendant, Kepa Home Corporation, is a Massachusetts business corporation. In or about late 1992 or early 1993, Kepa built a single family residence for Plaintiffs at Lot 36, Major Hale Drive, Framingham. The Plaintiffs moved into the home constructed by the Defendant in the spring of 1993.
Defendant counsel’s admission that the defendant constructed the home and was thus a proper party herein was dispositive of the defendant’s motion.
A pretrial conference report is designed to “define, simplify and limit the issues to be decided, reduce error, prevent surprise, promote judicial economy and encourage settlement.” Slade v. Slade, 43 Mass. App. Ct. 376, 378 (1997). The pretrial report narrows and simplifies issues for trial primarily through admissions or stipulations by counsel. Mitchell v. Walton Lunch Co., 305 Mass. 76, 80 (1939). It has long been settled in this Commonwealth, even prior to the promulgation of Mass. R. Civ. P., Rule 16, which now governs pretrial reports, that trial should be confined to the issues disclosed in a pretrial report, and that the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Slade v. Slade, supra at 376, n.13. See Whitcomb v. Hearst Corp., 329 Mass. 193, 201 (1952); Lynch v. Kaufman, 329 Mass. 762 (1952); Donnelly v. Larkin, 327 Mass. 287, 295 (1951); DeLuca v. Cleary, 47 Mass. App. Ct. 50, 52 (1999); Norton v. Vaughan, 13 Mass. App. Ct. 1075, 1076 (1982). The obvious rationale for the rule is the elimination of what resulted in this case; namely, unfair surprise to the court and opposing party by raising an issue for the first time mid-trial.[2] The defendant did not argue in the trial court or before this Division that the stipulation should be vacated as “improvident or not conducive to justice.” See Atlantic Pipe Corp. v. R.J. Longo Const. Co., 35 Mass. App. Ct. 459, 464-465 (1993). The stipulation that Kepa Homes built the plaintiffs’ house thus remained binding, and the defendant cannot now disclaim its responsibility by suggesting that the wrong party was sued.
Even if the defendant were not bound by its stipulation, the documents themselves make clear that Kepa Homes Corp. was a proper party. The purchase and sale agreement identifies the seller as “Jose Martins, Trustee of Kepa Realty Trust and President of Kepa Home Corp.,” and specifically incorporates the warranties, construction agreement and specifications which were attached. Paragraph 25 of *172 the agreement provides that the plaintiff-buyers were not influenced to enter into the transaction or did not rely on any warranties or representations except those “made ... by the Seller ... as set forth in the warranties, construction agreement and specifications attached hereto and incorporated by reference herein.” Those warranties and representations survived the acceptance of the purchase and sale agreement and the transfer of the deed. See Lipson v. Southgate Park Corp., 345 Mass. 621, 624-625 (1963). Kepa Home, as seller, was liable for breach of the warranty and contract requirements in question.
2. There is no merit in the defendant’s second contention that the trial judge erred in admitting evidence that the defendant failed to install felt paper underlayment beneath the roof shingles because the plaintiffs failed to plead “a felt paper cause of action” in their complaint and did not disclose before trial that this specific contract breach would be a basis for recovery.
Under the “notice pleading” requirements of Mass. R. Civ. P., Rule 8(a) (1), it is sufficient if a complaint sets forth “a short and plain statement of the claim showing that the pleader is entitled to relief’ which affords the defendant “fair notice” of the nature and basis of the action against him. Clark v. Greenhalge, 411 Mass. 410, 413 n.6 (1991); Ciccone v. Smith, 3 Mass. App. Ct. 733, 734 (1975). It is unnecessary for the complaint to state formally a cause of action or specific theory of recovery. Gallant v. Worcester, 383 Mass. 707, 709 (1981); Bang v. Tran, 1997 Mass. App. Div. 122, 123; Mutual Oil Co. v. A.A. Sunoco, Inc., 1999 Mass. App. Div. 176, 177. Nor is it essential that the complaint allege all elements of a cause of action, Glenn v. Aiken, 409 Mass. 699, 702-703 (1991), or demonstrate the specific causal link between the defendant’s acts or omissions and the damages sustained. See Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 908 n.3 (1984). There is, of course, no such thing as a “felt paper cause of action.” The plaintiffs’ complaint herein adequately set forth actionable claims for breach of contract, breach of warranty and G.L.C. 93A unfair and deceptive practices arising from defendant Kepa’s faulty installation of a defective roof. With respect to the first count, the complaint specifically asserts that “[t]he Defendant breached its contract with the Plaintiffs by providing a home with a roof that leaks.” It was unnecessary to allege each of Kepa’s specific deviations from building contract requirements in order to afford fair notice of the plaintiffs’ action.
Moreover, the record contradicts the defendant’s claim that it was unfairly surprised at trial by testimony of the plaintiffs’ expert regarding the lack of felt paper underlayment. In answers to interrogatories propounded by Kepa, plaintiff Jonathan Siegel had stated that “it appears that the major source of the leak was probably the improper construction of the roof and improper non-conforming installation of roofing materials rather than the installation of the improper, nonconforming Hicks vents.” In the parties’ joint pretrial memorandum, the plaintiffs further indicated in their statement of expected evidence:
The Defendant had failed to install roofing underlayment under the roof shingles as required by the contract and the building code. The Defendant had failed to install flashing of any nature whatsoever in the roof valleys as required by the contract. The Defendant had simply fastened roofing shingles over bare plywood. ...
In short, defendant Kepa was clearly on notice that the plaintiffs would seek to prove the lack of felt underlayment at trial. There was no error in the court’s denial of Kepa’s motion in limine.
3. Kepa also contends that the court erred in failing to direct a verdict in its favor on the contract claim because the plaintiffs were required by the contract to inspect the house before accepting performance and should have seen that the wrong roof vents had been installed. The defendant’s argument mistakenly *173 assumes that the jury found for the plaintiffs for breach of contract solely because of the defendant’s installation of the cheaper, non-conforming Hicks vents. At trial, however, the plaintiffs’ expert testified:
The roof-to-wall intersections weren’t properly flashed, the valleys weren’t properly flashed, there was no underlayment put in, and the Hicks — the drip-edge vent was blocked in the wintertime. So it was just a number of, I would call, poor roofing practice in that one section that led to the leaks.
Thus the theory of the plaintiffs’ case for breach of contract did not contemplate simply the wrong roof vents, but was based upon the missing roof underlayment and other errors in installation. It cannot be determined from the record whether the jury’s verdict on the contract claim was based on the improper vents, inadequate underlayment, or other defective construction of the roof. Kepa has not argued that an inspection would have disclosed all proven instances of its shoddy workmanship, and has failed to establish that it was entitled as a matter of law to a finding on the plaintiffs’ breach of contract count.
Further, there is no indication in the record that Kepa requested a specific jury instruction on the plaintiffs’ duty to inspect, or that it objected to any erroneous or omitted instruction on the plaintiffs’ contract claim. See Mass. R. Civ. P., Rule 51(b); McCormick v. B.F. Goodrich Co., 8 Mass. App. Ct. 885, 887-888 (1979).[3] As the court’s jury instructions and any requests by Kepa for the same have not be included in the record before us, we are not obligated to consider them. VanDyke v. Bixby, 388 Mass. 663, 670 (1983). It was Kepa’s duty, as appellant, to prepare and present a complete trial court record containing all matters necessary for review of issues raised on appeal. Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991); Harvard Univ. v. Goldstein, 1999 Mass. App. Div. 67, 68.
4. The parties agree that the court erred in assessing interest from December 31, 1993, the apparent date of the contract breach, in the absence of any specific finding by the jury as to the date of breach. Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 125 (1986). Pursuant to G.L.c. 231, §6C, interest must be recalculated to run from the date of demand; i.e, May 22,1997, the date of complaint filing.
The judgment for the plaintiffs is affirmed, and the case is returned to the trial court for the recomputation of interest in accordance with this Opinion.
So ordered.

 It may be noted that surprise and a mere delay in the inevitable prosecution of the plaintiffs’ claim against Martins/Kepa are all that would have resulted, even if Kepa Realty Trust were an indispensable party. Pursuant to Mass. R. Civ. P., Rule 19(b), failure to join a necessary party does not automatically require dismissal. “Massachusetts practice is more liberal than other jurisdictions in allowing amendments adding or substituting defendants ... [even] after the statute of limitations has run against the proposed substitute defendant.” National Lumber Co. v. LeFrancois Const. Corp., 430 Mass. 663, 671 (2000). “[Tjhe court generally will afford plaintiff every opportunity to add the absentee to the suit before it will order dismissal of the suit.” Hamilton v. Conservation Commn. of Orleans, 12 Mass. App. Ct. 359, 371-372 (1981).

 The record is also silent on the question of whether Kepa requested any special questions to be asked of the jury to specify the basis for their breach of contract finding for the plaintiffs. See Mass. R. Civ. P., Rule 49(a); Hawco v. Massachusetts Bay Transp. Auth., 398 Mass. 1006 (1986). See also Weeks v. Harbor Nat’l Bank, 388 Mass. 141, 145 (1983).